AARON LEVY, APPELLANT, VS. ROBERT COX, SR., APPELLEE.

1. When the character of the possession of a defendant in ejectment is a material inquiry, any evidence explanatory of its nature is legitimate and proper.

2. A charge that "a man out of possession cannot convey land that is in the adverse possession of a third party," as against such third party, is a correct legal proposition, but if there is no evidence tending to show adverse possession in such party it is abstract and liable to mislead the jury.

3. Right of possession of land is incident to a legal title, and a person who has a legal title is presumed to be in possession.

4. When a party claiming land, for which he has not received a conveyance, voluntarily directs a deed to be made to another person, he is estopped thereby from asserting title thereto, as against an innocent purchaser thereof by regular conveyance from the sole heir of the person in whose name said deed was made.

5. Recording a deed is equivalent to a delivery thereof, in the absence of any fraud on the grantor.

6. The jury are the judges of the sufficiency and· weight of the evidence, and of the credibility of the witnesses, but when a plaintiff makes out a plain and uncontradicted case, and his witnesses are unimpeached, they have no right to disregard the evidence.

Appeal from the Circuit Court for Leon county.

The facts of the case are stated in the opinion.

*D. W. Gwynn* and *A. Paterson* for Appellant.

*D. S. Walker, Jr.*, for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court:

The appellant brought an action of ejectment in the Circuit Court of Leon county, against the appellee, for the recovery of a lot in the city of Tallahassee.

Verdict and judgment for defendant.

It appeared from the evidence in the court below that the defendant contracted in writing with one Kuhns for the purchase of the lot in controversy for seven hundred dollars. The agreement was as follows:

" STATE OF FLORIDA, ⎱
    Leon county.    ⎰

"Articles of agreement made this, the thirty-first day of March, A. D. 1870, between William Kuhns and Robert Cox, of said State and· county: Robert Cox agrees to purchase from William Kuhns lot No. 282, in the original plan of the city of Tallahassee, and the said William Kuhns agrees to sell said lot upon the following terms: Robert Cox agrees to pay William Kuhns one hundred dollars in cash as earnest of said purchase, which sum is to be forfeited if the said Robert Cox shall fail to comply with the condition hereinafter stated. The said Robert Cox is to pay for the said lot the sum of seven hundred dollars, including the aforesaid one hundred dollars, of

which sum there is to be paid by Robert Cox $400.00, the 15th day of April, A. D. 1870, provided the said William Kuhns gives the said Robert Cox quiet and peaceable possession at that date. If Robert Cox is not put in possession at that date then he is to pay the said $400.00 whenever he is put in possession, and the said Robert Cox is to pay the balance of two hundred dollars on the first day of January, A. D. 1871.

" The said William Kuhns agrees to make complete and perfect titles to said Robert Cox upon his compliance with the above mentioned conditions. It is further agreed that the said Robert Cox may, notwithstanding any tenant, proceed to make such improvements as he may think desirable upon the said premises.

" It is further agreed that if the said Robert Cox does not pay to said Kuhns the said $400.00 on the 15th day of April, A. D., 1870, then this agreement shall be null and void, and the said Cox shall forfeit all claims or demands to the said $100,00, and all right or title to the said lot, and shall surrender said lot to said Kuhns at his request, and it is further agreed that full conveyance and acquittals shall be made to carry out this contract when the said Robert Cox shall have complied with the above mentioned conditions, signed, sealed and delivered the day and date above mentioned.

(Signed,) " WM. KUHNS, [SEAL.]
ROBERT COX." [SEAL.]

" Witnesses,
" WILLIAM CROLICK,
E. H. TAPSCOTT."

That he paid one hundred dollars thereon in cash. That by agreement between defendant and Kuhns, and one Williams, Williams paid the remainder of the purchase money due Kuhns, though it does not appear

what amount thereof was then due, or whether the defendant had paid any more thereof to Kuhns than the one hundred dollars above alluded to, and that Kuhns was to make a deed to Williams, and when Williams should have been reimbursed the amount advanced by him, he was to make a deed to the lot to Benjamin F. Cox, who was the son of defendant. The record does not show any deed from Kuhns to Williams. Williams made a deed to Benjamin F. Cox. There is no contradictory evidence in the record as to whether the money was paid to Williams by the defendant or by Benjamin F. Cox. Subsequently to the making of the deed by Williams to Benjamin F. Cox the said Cox died leaving a widow, Adeline Cox. They had no children. After the death of said Cox his widow intermarried with one Alexander. Adeline Alexander and her husband conveyed the lot to the plaintiff, Aaron Levy.

The only written evidence the defendant introduced was the contract of purchase by him from Kuhns.

The first error assigned is, that the court erred in permitting the introduction of this paper in evidence.

The character of the possession of a defendant in ejectment, whether he holds by title, or is a tenant, or lessee of the owner, or a trespasser, is often a material inquiry, with different incidents and consequences attached to each, and when the nature of the defendant's possession becomes the subject of inquiry, any evidence explanatory of it is legitimate and proper. It is no evidence of title, but merely explains the status of his possession. There was no error in its admission.

The second error assigned is, that the court erred " in charging the jury upon the decision in 13 Fla., by which they were led to believe that a person out of possession could not make any conveyance."

The charge of the court was as follows: " A man or wo-

man out of possession cannot convey land that is in the adverse possession of a third party. If, therefore, Mrs. Alexander was not in possession of lot 282 at the time she made a deed to plaintiff, but said lot was, at that time, in the adverse possession of defendant, then her deed was void as against Cox."

This charge was erroneous. There is nothing in the record to show that the possession of Robert Cox was adverse to Kuhns or Williams, or their grantees. The instrument of writing under which he took possession was nothing more than a contract to purchase. In Jackson vs. Camp, 1 Cowen, 605, the court held that when one makes a contract to have a deed, though he enters into the possession of the land described by it, he is not in a situation to hold adversely until the condition upon which he is to have his deed is fulfilled. This was the nature of his holding until he agreed that Kuhns should convey the land to Williams, and that Williams should convey it to his son. This agreement nullified the first agreement with Kuhns. Jackson vs. Camp, *supra.*

He was precluded by this last agreement from asserting an adverse title to the land as against the grantee, to whom he had consented the deed should be made. He does not say in his evidence that he held possession under claim of title or adversely to any person.

The next error assigned was that the court erred in not charging the jury, as requested by plaintiff, that " right of possession is incident to a legal title ; a person who has a legal title is presumed to be in possession. If the jury find that Adeline Alexander had a legal title at the time she conveyed to the plaintiff, Levy, they will find for the plaintiff."

This charge should have been given. It contained a cor-

rect legal proposition, inasmuch as Robert Cox was not holding the property adversely.

The next error assigned was that the court erred in refusing a new trial, because the verdict was contrary to the evidence.

The plaintiff introduced a deed from Williams and wife to B. F. Cox of the lot sued for. The defendant in his testimony admits that this deed was made to B. F. Cox by his special direction and consent. It is in evidence also that Adeline Alexander was the wife of B. F. Cox at the time of his death and that he left no children surviving him. Our statute, (McC's. Dig., sec. 5, p. 476,) provides that where the husband dies intestate, without children, the widow is the sole heir. A deed from Adeline, his wife, to the plaintiff was also before the jury. As to these facts there was no dispute; they stood uncontradicted and the most important of them was testified to by the defendant himself.

In a controversy between defendant and B. F. Cox, if it had been shown that the defendant had paid the purchase money, it might have been held in a suit in equity that it was a transaction for convenience merely, and that B. F. Cox was seised of the property as a trustee for his use. But when the land has gone by regular conveyance into the hands of an innocent purchaser, we are of the opinion that the defendant, Robert Cox, is estopped by his own act, directing that the deed should be made to his son, from setting up a claim of title as against such purchaser from the legal heir of his son. So far as such purchase is concerned it is immaterial whether the defendant or B. F. Cox paid the purchase money to Williams. He said in his evidence that " I agreed that * * * Williams should make the deed to my son Ben, because I wanted to save it for my wife in case I died ; * * * I knew that Ben would do what was right."

The deed itself does not show that the wife was to have any interest in the land, nor does it appear from the evidence that he communicated his reason to any person. The naked fact stands, that he caused the deed to be made to his son. The law imposes silence on him and prevents his setting up a claim against a purchaser who had been been influenced by his conduct, and renders the title of the purchaser valid. Bird vs. Benton, 2 Devereaux, 179; Governor vs. Freeman, 4 Ib., 472; Grace vs. Mercer, 10 B. Monroe, 157.

This principle is wholly irrespective of the nature of the property sold, whether the same be real or personal. Commonwealth vs. Shuman's Adm'rs, 6 Harris, 343.

On this uncontradicted evidence the jury should have found a verdict for plaintiff.

The jury, it is true, are the judges of the evidence, but when a plaintiff makes out a plain and uncontradicted case, and his witnesses are unimpeached, they have no right to disregard the evidence.

The only conflict in the evidence was as to who paid the money to Williams, which was advanced by him, and, as we have seen, this was an immaterial issue between an innocent purchaser and the defendant. The defendant stated in his evidence that the deed was never delivered to B. F. Cox. It was recorded five days after its execution and this was equivalent to a delivery.

Judgment is reversed and a new trial granted.

A petition for a re-hearing was filed by counsel for appellee, which was denied.